Thank you, Judge Horwitz. May it please the court, Lauren Weber for petitioner Tingting Zhang. I'd like to save three minutes for rebuttal. Ms. Zhang is a devout Christian who was persecuted for worshiping at a house church in China and forbidden from practicing her religion openly. With that background, I'd like to focus on three points today. First, this court has jurisdiction. A preponderance of the evidence shows that the petition was delivered to the PO Box by the deadline, and so is timeline. Second, the board failed to assess Ms. Zhang's credibility under the totality of the circumstances test that the Real ID Act and now a law require. So, counsel, can I ask a question about the jurisdiction issue? It's the first time I had encountered this, the Shaivakov case. I'm probably saying that wrong, but so it's interesting if you read that case because it explains that it seems to rely on two things. It seems to rely on this practice, but it also says and tangible evidence such as a notification slip. And it occurred to me as I was reading that opinion, how did the, where did the information about the notification slip come from? Do you know, was that something that like the panel in that case had gotten from our clerk's office or is that some, I'm trying to figure out like, would the party ever know that there was a notification slip or not, right? A party would know if you had a UPS tracking thing and that would, but a notification slip on a mail item, it seems like only the court would know about, but I'm just confused as to where that information came from that they don't say in the case that I could see. Right, I'm not sure either where it came from, Your Honor. Do you even know what it is? The record in that case is not publicly available since it's an immigration case. Counsel, do you know what a notification slip is? By the way, I was reading that opinion and I must admit I've been around here a while. I don't know what a notification slip is. Does the record in that case tell me what it is? I'm not sure, Your Honor. It appears to be something that the postal service employee would have put in the PO box to say, I delivered it at this time or I tried to deliver it at this time. And it's true that we don't have the same type of evidence here, the notification slip, but we still have tangible evidence in the form of the mailing envelope. Can I ask you a follow-up? So I understand your argument from your brief. It's very good on the other evidence that, I'm curious to talk about that, but before we leave this, it also is like, I think the case is 20 years old or something like this at this point. Do we know whether or not this is still the same practice for a court? Do you know or? I haven't asked the clerk's office, but. There's nothing in the record or in this court's case law saying that the practice has changed. And the idea that there is a one day lag between the PO box and the clerk's office makes sense because they're in different places. The PO box is not at the courthouse. And so it would be impossible not to have some kind of lag in moving mail between those two places. I guess I can take judicial notice of the fact that there's often a one day lag between the time I send orders to the clerk's office and when they are filed. But I'm not sure that. Assuming for a moment that there is jurisdiction in this case and that the petition was timely filed, address, it seems to me the rest of the case turns on the adverse credibility determination by the IJ, which was upheld by the BIA. Tell us why that adverse credibility determination shouldn't stand. Sure, Your Honor. So most of it turns on that except for the cat claim, which requires a remand because the board failed to do it. Because in that one, even if the adverse credibility determination stands, the board can't deny simply based on that. It must look at all the evidence. Right, exactly. Because you can make out a cat claim with country conditions alone and the regulations explicitly require the agency. As long as you turn to that, let me ask you a question. Because this is where I need a little bit of help. If the board had said we uphold the adverse credibility determination and the remaining evidence doesn't compel a finding of a cat violation, what would we do in this case if we found that the adverse credibility determination was inappropriately upheld? Would we still have to remand? I'm sorry, if you found that? That it was inappropriately upheld. In other words, I'm not sure her testimony in this case establishes torture or establishes a likelihood or probability of torture. What seems to be most supportive of that are the country condition reports, and which we relied in the past to say the Christians maybe faced this. So I guess my question is, why does the exclusion of her testimony matter here? And I think your answer is to anticipate it because the board never considered the other evidence. Is that the point? Not that her testimony would have been determinative, but the board was required to consider the other evidence even if it didn't consider her testimony. That's correct. That the board had to consider the country report, which discusses on the first page of page 110 of the record how the Chinese government tortures members of unregistered Christian house churches. And the board had to take that into account. And so this court can't look at the report now. It would be making factual findings in the first instance because the agency hasn't considered it. Now that I've lost you down the garden path here, let me take you back to the beginning of it. So tell me again why the adverse credibility determination was, in your view, not supported by the record. Sure. So I'll take you down a slightly different path to get there. And I'd like to talk about Elam, which changes the landscape of review here. And if this court disagrees that Elam applies, then we're still asking for the same relief from our opening brief to say that the adverse credibility determination is not supported by substantial evidence and should remand the board to reach the merits. But before Elam, the single factor rule severely constrained this court's review of adverse credibility determinations. If at least a single ground was supported by substantial evidence, this court had to uphold the finding. And if none of the grounds were supported by substantial evidence, the petitioner would be deemed credible. So there was no room in that binary for this court to determine whether the board had applied the proper totality test that the Real ID Act requires. But now that Elam overruled the single factor rule and concluded that it was contrary to the Real ID Act, the landscape has changed. And you can see that in Zhang, for example, which we cite in our applied brief. The board applied the single factor rule there. And the panel said that's wrong and remanded for the board to apply the proper totality test under Elam. And this board did the same thing here. It looked at only a single factor, put blinders on, and then stopped its analysis there. But the IJ gave two intertwined reasons. So counsel, do you read Elam as saying that a single factor could never support an adverse credibility finding or be substantial evidence for something? Or is it just that we had this kind of cribbed, if a single factor supported, then they won, even if that didn't really make sense. But I'm not sure I read Elam as saying that a single factor could never. It might be one issue, but I'm trying to think of a hypothetical with a massive lie or something. But somebody just caught in a massive, bold-faced lie. In that instance, it would seem to me that single factor, not because of the single factor rule, but just because it was such a bad lie that they have an adverse credibility determination. So which way do you read Elam? As requiring more than one or just one does not get you there necessarily? Or automatically? The second, Your Honor. So one sometimes could be sufficient. If someone said Superman. That's okay. So I think that makes sense. And so here, I didn't see in the BIA decision where the BIA, I understand your reliance on, and the BIA does say at the end, it says, because we affirm the immigration judge's adverse credibility finding on this basis, we need not review any other basis. And that could be read as, it doesn't cite to anything. So it could be read as saying, that's a single factor and that's all we need. Although, that's a little weird because that's our rule for reviewing the BIA. That's not the BIA's standard. It wasn't, I don't think, before. It also could be read, though, and tell me why this wouldn't be a fair, sort of what I said earlier. There's this one issue, and this one issue is a big enough issue, and that's enough for us to conclude that this person's not credible or to conclude that it wasn't clear error for the IJ to conclude that this person's not credible. And therefore, we're upholding it. And if that's, why is that not a permissible reading of what the BIA did here? So, a couple points there, Your Honor. You're right that the single factor rule was for this court's review, but there were still times where the board applied it erroneously. That's what happened in Jane. And then, my reading is different because the board did not discuss the letter reason at all. So it was not taking that into account. It was narrowing its focus to just one of the IJ's two reasons for the adverse credibility finding, even though the IJ never said that either reason alone would have been sufficient. He repeatedly referred to two reasons, two separate points. He also expressly found that Ms. Johns testified credibly about the church going in the United States, and he said this was a somewhat close call that he would credibly had to make. So those are all part of the totality  But if counsel, if you would, put aside the alarm argument for a moment, which I think I understand, I want you to, I'm still trying to get a focus on something that you haven't quite gotten to yet. The IJ says you're not credible for two reasons. One is your mother's letter is not credible, and the BIA says we don't have to rely on that. So throw that one out. The other reason is you're not credible because, I think this is a fair rephrasing, if you had been, if you were telling the truth, you would have been on a list at the airport, and they wouldn't have let you leave, and you left. And therefore, you must not be telling the truth. Now, putting aside totality of the circumstances and the alarm argument, focus on that finding and tell us why you think it cannot be relied on. Sure, Your Honor. So for an IJ to find testimony implausible, the IJ's logical inferences have to be supported by substantial evidence in the record. The IJ cannot rely on, as COSA says, perceived common knowledge or gut feelings about something. And here, the IJ's animated belief for the adverse credibility determination was that China has a, quote, they have a National Identity Act. Anyone can just look up anything about you. But there is nothing in the record about a National Identity Act. There is also nothing saying that Chinese authorities try to prevent people from leaving the country just because they've been arrested for attending a house church. So counsel, the petitioner here, I think it was herself or himself, did testify that they had a criminal record, I think, that was networked nationally. I think that seems to be some evidence from the petitioner himself about the idea that A, it's a national network, right, and B, that it was a criminal record. And so that seems to, that's some evidence to think that you would have trouble with the national authorities when you were trying to get a passport or leave a country if you had a national, a criminal record that was networked nationally. Why is that not sufficient? So networked nationally means that it was connected to her national ID, and the record shows employers using it. She gave that number to a private employer when she was applying for a job. And her passport number, as the IJ recognized, did not match her national ID, so it's not clear what would have triggered any scrutiny when she was going to the airport to leave. You can see that at page 42 is where the IJ notes it. Page 194, you'll see her national ID, and pages 246 and 248, you can see her passport. And those numbers don't match. Even if they did, is there any evidence in the record that the Chinese government tries to present, prevent dissidents from leaving? No, Your Honor, certainly not. I mean, they might, they might, I'm speculating, they might like them to leave. They might like them to stay so they can punish them. But there's no evidence in the record one way or the other what the government's policy is when dissidents get to the airport and try to leave the country where they will no longer be engaging in acts that offend the government. That's exactly right, exactly right, Your Honor. And the IJ essentially assumed an inhuman level of competence and efficiency and coordination across a variety of Chinese agencies at different levels of the government, and that's the same type of impermissible speculation that happened in Li and Yi. To that question, counsel, it occurs to me, and we get a lot of these kind of cases, it seems like, that have a similar fact pattern from China. And I don't remember if it was this case or another one, I apologize, but I thought there was evidence that the person had to report weekly and not leave their home, or is that some other case that I'm thinking of? That's here too, Your Honor. She had to report to the local police weekly, and the same thing occurred in both Luo cases, for example, and in Li and in Li. In each of those cases, the petitioner was eventually able to obtain a visa or leave China using her own passport and come to the United States, and those are all cases where this court granted the petition. So it's clear that at least some of the time after arrests like the Zhang's, people can leave China through official channels. Ms. Weber, you're another one in a long list of counsel who've tried to save time for rebuttal and largely failed, so I'll give you some time for rebuttal after we hear from the government. Thank you, Judge Roberts. Ms. Li, you're up. Good morning, Your Honors. May it please the Court, Sana Li representing the Attorney General. First off, I'd like to talk about the Court's jurisdiction in this case. The petitioner in this case filed her petition for review after the deadline, the 30-day deadline, which is mandatory and jurisdictional in order for the Court to consider this case. And she did not submit any tangible evidence other than the envelope, which... Well, she did more than that. She said, I mailed it. I mailed it at a certain time. Here's the evidence from the post office about how quickly stuff usually gets there, and most importantly, there's evidence that it was stamped by the clerk the next day. The clerk files things. All you have to do is get it to the clerk within the time period. And we've said, in the name that neither Judge Van Dyck nor I can pronounce, Shekiakoff, I guess, is the best I can do, that, look, we know how our place works. We have a post office box that isn't here. Stuff gets picked up in the evening, brought to the clerk's office, and gets stamped the next day. That's at least some evidence that it was filed on time. And so now, because arriving at the post office box, you agree, is timely filing, yes? Yes, Your Honor. So if it arrived at the post office box within the 30-day period, it was timely filed, notwithstanding the fact that the clerk stamped it the next day. We all agree on that. Yes. So now there's some evidence, they've submitted some evidence, that it was received on time. What's the government's contrary evidence? We have to decide this by a preponderance. The only evidence, it seems to me, is that it was stamped the next day. And if Shekiakoff stands for anything, it must stand for the proposition that that's not enough to disprove timely filing. Your Honor, the government disagrees because in – well, first of all, she didn't submit any declaration or affidavits stating – No, she submitted stuff from the Postal Service about their delivery practices. Right, the information from the – Yeah, but put all that aside for a moment. Just focus for a moment on this. Her evidence that it was filed on time is the – our analysis in Shekiakoff, which is that it's normally received the day before and stamped the next day. That's some evidence. What's your contrary evidence? Well, Your Honor, in that case – No, I don't – don't tell me what Shekiakoff says or doesn't say. I'm focusing on a very specific question. We have to decide this by a preponderance of the evidence. She submitted some evidence. It may not be compelling. It may not be wonderful. What's your evidence on the other side? Well, Your Honor, even if you use the preponderance of the evidence standard, she didn't submit any evidence that the court actually – You're misunderstanding my question. What did you submit? Yeah, what did you submit? It seems to me the only evidence that you offer in order for us to decide this case is the fact that it was stamped the next day. And Shekiakoff tells me that's not sufficient to establish that it wasn't – that it didn't arrive in time. So whatever else the differences in the cases are, it seems to me she's got some evidence and you've got none. And so don't we just move on to the merits then? Well, Your Honor, it's her burden. Well, she submitted something. She submitted – she submitted the notion that it was stamped the next day and sent to the – nobody doubts it was sent to the post office box. So I suppose, you know, if we were wondering – if she came to the – if she said I brought it there to the clerk and it was stamped the next day, she wouldn't have any evidence at all. But it was sent to the post office box. It was stamped the next day. Shekiakoff tells us the appellant, petitioner, doesn't automatically lose under those circumstances. We have to weigh the evidence. And so I'm trying to figure out what the other evidence is here other than the fact that it's stamped the next day. Counsel, what might be helpful is how do you read Shekiakoff? Do you read it – like what is the rule in Shekiakoff? Is it that if it's stamped the next day that it's on time? Or what is the rule from your perspective? Well, from our perspective, I mean, in Shekiakoff, it just states that there's a general practice in the court. But it doesn't mean that the petitioner automatically gets to show that her petition was timely where she didn't also submit this other tangible evidence. Where in that case, the petitioner submitted the post office notifications from the delivery person into the post office box. And that was actual proof that the court received that mail in the post office box on the day that it was due. But in this case, the petitioner doesn't have any evidence like that. She didn't even submit an affidavit or a declaration. We're supposed to conclude from that that it was delivered to the post office box not on the day it was due but before the day it was due. And that contrary to the circuit's usual practice of stamping all the materials the next day, the circuit waited two days to stamp it. Yes? Well, Your Honor, you know. Maybe you want to move on to the merits. But I just, you know, I know the facts are slightly different in Shekiakoff. But the critical fact in Shekiakoff is we say we empty the post office box at night and stamp it the next day. And so you're asking us to assume that we don't empty it at night and stamp it the next day, that we may hold on to the stuff for a long time or that we don't empty it every night. And my problem with that is, first, I know it's not true. But second, it just strikes me as quite implausible. Now, this is an interesting case on the merits, so I don't want to make you spend all your time on timely filing. And we may have been wrong in Shekiakoff. But as often happens, we come to a case with prior cases decided. And I'm having trouble getting around it, I must tell you. Well, Your Honor, you know, we can't really speak to what the court's internal practices are. No, but we can. But we can. And we did. And there's no, as Judge Van Dyke suggested, there's no indication that they've changed in some way. I don't want to go down and ask the clerk what they usually do. But it seems to me until somebody suggests that the practices have changed, we ought to assume that they remain the same. But any event, I think we've probably exhausted this topic, unless somebody else has a question about it. So I am interested in your evaluation of the merits. And if I can start from the back end, as I did with Ms. Weber, the law seems to be that an adverse credibility determination, in and of itself, is not enough to deny a CAT claim, that the BIA must look at all the evidence in the record before denying a CAT claim. Putting aside whether the other evidence in the record, in this case, would support the CAT claim or not, I don't see any indication in this record that the BIA based the denial of the CAT claim on anything but the adverse credibility determination. Am I wrong in that reading? Your Honor, the Board's decision states that the petitioner failed to present sufficient credible evidence to meet her burden of proof for torture. In addition, the immigration judge also stated that he or she considered all of the evidence. Right, but the Board didn't do a Bourbon finding here or uphold or say we affirm the immigration judge for the reasons she gave. I'm reading, and I think Judge Erickson probably has it in front of her, that part of the decision that deals with CAT is very brief and seems to me to say, simply because we uphold the adverse credibility determination, we deny the CAT claim. Assuming that's what the Board said for a moment, and I can read it to you verbatim later, wouldn't we have to send it back for the Board to address the rest of the evidence that might support the CAT claim? Well, Your Honor, I don't believe that that's what the Board did here. The Board did consider all of the evidence and basically affirmed the immigration judge's adverse credibility determination, and both the immigration judge and the Board used all of the evidence. But the IJ had said, well, she was beaten once, you know, sort of no big deal, but that's not enough. So there was some basis, at least for the IJ, to say that the CAT claim wasn't supported, setting aside the credibility problems found by the IJ. Can I ask a question that's kind of related? I wanted to ask the other side, so I'm curious, both sides' view of this. It's kind of an interesting legal question because, on one hand, we have precedence to say you cannot deny a CAT claim based wholly on adverse credibility, as Judge Hurwitz. So that's in our precedence. We also, though, have precedence to say that non-individualized evidence, like completely non-individual, can never be sufficient for a CAT claim, which kind of makes some sense to me. In other words, country conditions reports alone could never be sufficient for a CAT claim, which probably is just because, I mean, I've never seen a country conditions report. They can say conditions are really bad, but they don't say that over 50 percent of people are being tortured, right, or over 50 percent. So you have to have some sort of tie. So as I read the two, you know, in theory those two things seem to be a little bit in conflict, but they're not necessarily in conflict if you assume that there might be other evidence, individualized evidence, in the record, right? Like there might be maybe on an adverse credibility finding you've knocked out all of that petitioner's own testimony, but there's still, you know, the mom's testimony or the brother's testimony or the pastor's testimony or something that's still in the record. And so that would make it more individualized in combination with the country conditions evidence to get you over that 50 percent threshold. So is that the way to reconcile these two sort of on first blush seem like they're almost inconsistent? And if that is or isn't, how does that affect what the BIA did here? And specifically, what evidence is in this record? Assuming the adverse credibility determination knocked out all of her testimony, what evidence is in the record that would be individualized that would support a CAT determination here? Your Honor, I don't believe that she submitted enough evidence to show that she was tortured or is in danger of being tortured upon return. I don't remember. Is there none? If her testimony itself is gone, is there any individualized evidence in this record? What was there? Was there a pastor in this case? Yeah. There was a pastor who his testimony was, let's see. His testimony was about what had happened in the United States, I think, correct? And then what other evidence was there that would be related to her as opposed to just country conditions evidence? Well, Your Honor, I don't believe she submitted any particularized evidence. Was there documents like from China that were related to her? There was a letter from her mother. That's right. Which the IJ didn't find credible, but the board didn't treat, right? Right. So let me ask Judge Van Dyke's question slightly differently and see if you can help me. Let's assume that the BIA simply said because we find her not credible, we are rejecting her CAT claim. I know it said a little bit more. Assuming it just said that, you would agree that our job wouldn't be to determine whether there was evidence in the record sufficient to support her CAT claim or not. We'd have to send it back for the board in the first instance to evaluate that evidence, right? It's not our job to evaluate it. Yes, Your Honor. Okay. So my question is, now recognizing that, it seems to me that's what the board did. And that's why I'm having trouble. It said the respondent's testimony is found to lack credibility. And then it says the respondent did not present sufficient credible evidence to show that it was more likely or not. And so my problem is I'm not sure that I read the board saying other evidence or just because we've knocked out your credibility determination, then we're done. Tell me why I should read it as the board also saying and the other evidence doesn't get us there. Well, Your Honor, the board stated that the petitioner didn't present sufficient. Right. But that sentence directly follows saying the respondent's testimony has been found to lack credibility and does not establish a CAT claim. And so if they put the word other in front of credible, I'd be in your camp on this one. Tell me why I should read this as just not going back to the critical credibility finding. Now, it doesn't matter if we find that the credibility finding isn't supported, but I want to get to that in a second. Well, the board stated that she didn't submit sufficient. Right. Sufficient, I believe, covers the evidence that the petitioner submitted in this case. And in addition, the immigration judge stated that he or she also considered all of the evidence in this case, even if not specifically explicitly addressed in the decision. Now, we've taken you past time, but I think in fairness we need to ask you to address the basic claim in the case, which is that the IJ's adverse credibility finding was based on speculation about the way Chinese authorities would act at the airport. Tell us why the IJ's adverse credibility finding was appropriate. It was appropriate because the petitioner herself testified that, you know, her criminal record is nationally networked. And she also stated that this prospective employer didn't hire her because they knew about her criminal record. And that was, you know, apparently the case for all employers in China. They all have access to people's criminal records. So it's not speculation for the immigration judge to determine that it was implausible that she could just leave China where the government. What evidence was there that China won't let people with criminal records leave? Well, Your Honor, it's the petitioner's testimony that the Chinese government has this national network of information. So that it might be available. Maybe we can infer from that that it's available to all government officials. I'm not sure we can, but maybe we can infer from that. The difficulty I have is that we have, I don't know, 45 Chinese immigration cases every month, and 30 of them involve somebody who was arrested for being in a house church. And they all seem to get out of the country. And so I'm not sure how I can infer from that that the Chinese authorities will prevent them from leaving at the airport, particularly in a case like this where the testimony is that she got a fake ID number to leave, a different identification to leave. So why is it, it may be common sense. I mean, it may actually be true. But isn't it really based on the IJ's speculation that the country must have a policy of presenting those whose names appear on criminal lists from leaving the country? We have a policy of expelling them. So I'm trying to figure out why it's a natural conclusion that they would try to keep her there. Well, Your Honor, the petitioner herself testified that she went through exit controls, an exit control bureau to get the passport and also presumably to exit the country. So it's not speculation for the agency to determine that, well, in order to leave the country, she would have had to go through these exit control bureaus, and that agency itself has access to her criminal information. It's a little bit of speculation, but let's assume it's a reasonable inference from her testimony. Can I ask one factual? Yeah. I know we're taking it in the wheel. I think Judge Hurwitz was talking about the different numbers. I just wanted to make sure I'm clear because now I'm confused. The two different numbers, I understood the idea to be that, you know, she has one number on her passport and another number as her national ID number, but not that either of those numbers is a fake number. They were just different numbers in the sense that, like, I have a different number on my driver's license than I have on my federal passport. Is that a correct understanding, or was one of those actually like a fake number, like she used a fake passport number to get out of the city? I believe she used her actual passport number. They're just different numbers. Yeah. Thank you. Thank you for correcting. So if they'd been fake numbers, maybe that would show her awareness. Well, except that under normal, it's an anomaly that those numbers wouldn't be the same. So unlike my passport number and my driver's license number aren't the same and never would be the same and aren't expected to be the same, I understood the situation from this record to be that they would be expected to be the same, but for some unknown reason, hers were different. So I did not. I thought that it was more like a driver's license, so maybe it would be helpful to get that clear. Does the record answer that question either way for us? Don't speculate either side, since speculation seems to be forbidden. Do we know? I think from the record, it seems that the immigration judge acknowledged that there are these two different numbers, but not assuming that they should have been the same. Yeah, didn't make any finding whatsoever. So we just don't know whether or not that was the ordinary course of business, a scrivener's error by the person who got her the passport or a nefarious plot. We just can't tell from this record. Yes, Your Honor. I think the immigration judge did acknowledge that these are different numbers, but even so still found that it's not plausible. No, I understand. That's a separate issue. We're just trying to figure out the providence of the different numbers, and I guess what you're telling us, unless Ms. Weber has additional information, is that our guess is as good as yours. Right, Your Honor. We've taken you about six minutes over, and I appreciate your patience with us. Ms. Weber, we'll give you a couple minutes for rebuttal. Thank you, Judge Hurwitz. The record doesn't make it clear whether the numbers should match, but as you were saying, there is nothing in the record showing that the Chinese government would have tried to prevent her from leaving the country, that any agency would have stepped in to do that. Well, but isn't that – isn't it – I'm trying to figure out what I can infer from the fact that she went to somebody special to get exit papers as opposed to just, you know, going to the regular state agency. Does that – does it help with the IJ's inference that had she gone through the regular way, they wouldn't have let her leave? You mean when she – are you talking about the agency that she sent these? Yeah, right. I mean, she didn't – she went to an agency. It seems to – the record seems to indicate because she thought they could make it possible for her to leave. And does that indicate any awareness that going through other channels might have made it more difficult for her to leave? Perhaps, Your Honor, but as the other cases show, the Guo cases, for example, it's still possible in at least some circumstances to leave. And there is simply nothing in the record showing that the local police would have spread her arrest record far and wide and that other agencies would have been searching for that and trying to stop her from leaving the country. And on the Kat claim, a few points if I may. So first, Judge Van Dyke, country conditions evidence can support a Kat claim all by itself. That comes from a case called Kamalthus originally. And it has to be particularized in the sense that it's talking about a group to which the petitioner belongs. So you have to find, as a matter of fact, that she, in fact, was a Christian. Right. Because that's the personal link to the country condition that says – and they execute Christians. But the country conditions evidence would also – if you knocked out their adverse credibility determination, if you knocked out all of their testimony through an adverse – the country conditions evidence alone showing it would require that the country conditions evidence show that somebody in that position has a 50% or greater likelihood – or greater than 50% likelihood, which I've never seen country conditions evidence that alone said every second person gets whacked or something like that. That seems – so as a practical matter, I'm just having trouble seeing how that would happen. I've never actually seen a case that only relied on country conditions evidence when there was no other evidence. It wasn't somehow tied to the person. Are you aware of a case like that? If I take your point, Your Honor, not off the top of my head. I'm sure I have cases in my notes, and I can submit a 28-day letter today. But here, the IJ expressly found that she was a practicing Christian in the United States, and he never questioned that she was worshipping at a house church in China and questioned whether the arrest and the ensuing events happened. But no one has questioned whether she truly was worshipping at a house church in China and belongs to a subset of people whom the report discusses. So that's a contrast to Indy Tall, for example, which the government relies on. The report described a generalized risk to all citizens of Nepal because of a conflict between the Maoists and their constitutional government. And turning back to whether the board considered the country report, Cole explains that where there is any indication that the board didn't consider all of the evidence before it, the decision can't stand. And one such indication is failing to mention highly probative or potentially dispositive evidence. And the country report is highly probative here for two reasons. The first is that, as Aguilar-Ramos says, country reports get, quote, special weight in removal proceedings. So by definition, they are highly probative. And the second is that, aside from the Jiang's testimony, the country report is really the only other evidence that could support her cat claim. So, of course, it's highly probative or potentially dispositive. And the fact that the board didn't even mention it shows that the board didn't actually consider it. And where the board has failed to consider the country report, the proper course is to remand for the board to consider it in the first instance. Thank you, Ms. Weber. We've taken you both substantially over time, and that's because we were interested in your answers and arguments on both sides. I appreciate the briefing on both sides. I want to thank Ms. Weber for participating in our pro bono program and providing excellent representation to Ms. Zhang. And this case will be submitted. Thank you, Your Honor.
judges: HURWITZ, VANDYKE, Ericksen